Benjamin REY and Elvia Rey, Appellants,

v.

Rosie ACOSTA, Appellee.

No. 08–92–00438–CV.

Court of Appeals of Texas, El Paso.

Aug. 4, 1993.

Justo Fernandez–Gonzalez, El Paso Legal Assistance, El Paso, for appellants.

Eduardo N. Lerma, El Paso, for appellee.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

LARSEN, Justice.

This case requires us to decide whether the provisions of TEX.PROP.CODE ANN. § 51.-002(d) (Vernon Supp.1993) apply retroactively. That statute requires that written notice of intent, with a 20–day period for debtors to cure default, precede acceleration of a note on residential real estate. We hold the provisions of Section 51.002(d) are retroactive as they are procedural, do not affect substantive rights, and are remedial in purpose. We therefore reverse the judgment of the trial court and remand for further proceedings.

### FACTS

Benjamin and Elvia Rey bought land in El Paso County from Rosie Acosta, a real estate broker. Ms. Acosta financed the purchase; on December 20, 1985, the Reys executed a real estate lien note for $45,000 with 12 percent interest and monthly payments to Ms. Acosta of $573.89. The Reys built a home on the land and live there with their family. The note waived notice of acceleration. The waiver clause reads:

On default in the payment of this Note or in the performance of any obligation in any instrument securing or collateral to it, this Note and all obligations in all instruments securing collateral to it shall become immediately due at the election of Payee. Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, protests, and notices of protest.

The Reys were consistently late in making payments on the note, and in May 1988, Ms. Acosta's attorney sent a letter stating they were four months in arrears, owing for February, March, April, and May. The letter informed the Reys:

This will serve to provide you notice that Ms. Acosta is hereby declaring the above Note due and owing immediately. Please therefore, remit to this office the balance of Thirty–Five Thousand Five Hundred Twenty–Eight 20/100 Dollars ($30,528.20) [1] within five (5) days upon receipt hereof. Your failure to tender the aforesaid amount, in a cashiers check, to this office within the specified time period will leave not alternative but for this office to foreclose on the property and evict you from said property.

Although this letter was dated May 3, 1988, the Reys did not receive it until June 17, 1988. They testified they had made the February payment on February 8, 1988. On June 14, 1988, before they received the demand letter, the Reys sent Acosta a cashier's check for two monthly payments. On July 13, 1988, they sent another cashier's check for three more payments, which they maintain brought them current on the note. Ms. Acosta did not negotiate these checks and eventually returned them.

Ms. Acosta filed suit for breach of contract seeking return of the property in lieu of the amount due under the note. After a bench trial, the trial court rendered judgment in Acosta's favor for $35,528.20. The Reys appeal, contending the Texas Property Code

---

1. The discrepancy between written and numerical demands is in the original letter. The Reys make no complaint about this error.

entitled them to notice of intent to accelerate and 20 days opportunity to cure before the entire note became due.

## NOTICE OF ACCELERATION UNDER THE PROPERTY CODE

The 1987 Legislature amended Texas Property Code § 51.002. Among other changes, it added a new section dealing with notice of intent to accelerate real estate notes on debtors' residences, which reads:

Notwithstanding any agreement to the contrary, the holder of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or contract. The debtor must be given at least 20 days to cure the default before the entire debt is due and notice of sale is given. TEX.PROP.CODE ANN. § 51.002(d).

This provision took effect January 1, 1988. In the Reys' Points of Error One through Four, they claim that this provision voided their waiver of notice contained in the 1985 contract. The controlling question is this: does Section 51.002(d) apply to a contract entered before the statute's effective date? We find that it does, and reverse the judgment of the trial court.

## RETROACTIVE APPLICATION OF STATUTE

■ The Texas Constitution generally prohibits retroactive laws, or laws impairing the obligation of contracts. TEX.CONST. art. I, § 16; *Pratt v. Story*, 530 S.W.2d 325, 328 (Tex.Civ.App.—Tyler 1975, no writ). Not all statutes fall within this prohibition, however, and remedial laws that do not disturb vested rights may apply retroactively. *Id.* at 328. A remedial statute is one which introduces a new regulation for the advancement of the public welfare or conducive to the public good, one enacted to afford a remedy, to improve and facilitate existing remedies, or one intended to correct defects, mistakes, and omissions in the laws of the State. A remedial statute generally addresses remedies or procedures. *Id.; Slate v. City of Ft.*

*Worth,* 193 S.W. 1143 (Tex.Civ.App.—El Paso 1917, no writ).

■ *Pratt* addressed a situation similar to the one here. In that case, the seller of land tried to repossess it after the buyers' home was destroyed by fire, and they ceased making payments under the contract of sale. The parties had executed the contract of sale in June 1966. Seller did not follow the provisions of TEX.REV.CIV.STAT.ANN. art. 1301b, effective September 1, 1969, which required the seller to give written notice of acceleration followed by a grace period before acceleration and forfeiture could legally occur. The seller argued this provision could not be applied retroactively to a contract entered before the law took effect. The Tyler Court disagreed, finding that the law was remedial, that it simply set out the procedure to follow before a forfeiture could occur, and that therefore it applied to the contract between the parties. *Pratt,* 530 S.W.2d at 328–29. The Court held:

'A statute cannot be said to be a retroactive law prohibited by the Constitution unless it can be shown that the application of the law would take away or impair vested rights acquired under existing law.' On the other hand, a remedial statute is applicable and controlling from the date it becomes effective. *Id., quoting McCain v. Yost,* 155 Tex. 174, 284 S.W.2d 898, 900 (Tex.1955).

A litigant has no vested right in a remedy. *Phil H. Pierce, Co. v. Watkins,* 263 S.W. 905 (Tex.1924); *Crawford v. City of Houston,* 600 S.W.2d 891, 893 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Remedial legislation not entirely eliminating a preexisting remedy applies retroactively from the effective date of the statute and is not an infringement on vested rights. *Farr v. Sun World Savings, Ass'n,* 810 S.W.2d 294, 297 (Tex. App.—El Paso 1991, no writ).

■ Here, when it was legal to do so, buyers specifically waived any notice of seller's intent to accelerate the note. The legislature later amended the Property Code to require such notice where a contract concerns the debtor's residence. It did so after these parties contracted but before Acosta took any action to accelerate the note or

retrieve the property. The statutory amendment did not abolish her right to accelerate the note, it simply required that written notice followed by a 20–day grace period precede acceleration. The new Section 51.002(d) did not eliminate the remedy bargained for by the parties; it merely altered the procedure for enforcing it. The statute did not alter any substantive rights. Thus, we find that this is a remedial statute, and that in applying it retroactively, we do not violate the Texas Constitution.[2] Ms. Acosta needed to comply with the 1988 amendment before she could accelerate the contract and call the entire note amount due. The trial court erred in holding otherwise.

■ Ms. Acosta argues alternatively that her letter of May 3, 1988, gave notice of acceleration sufficient to satisfy the statute. The letter, however, is not a statement that she intended to accelerate if the Reys did not bring the note current; rather it stated "Ms. Acosta is hereby declaring the above Note due and owing immediately" and demanded payment of the entire note within five days. Moreover, Acosta refused all payments tendered by the Reys after this letter. A creditor must give the debtor an opportunity to pay the past due installments before acceleration of the entire indebtedness; refusal of payments necessarily negates such an opportunity. Moreover, demand for past due payments must be made before acceleration. *Williamson v. Dunlap,* 693 S.W.2d 373, 374 (Tex.1985). The May 1988 letter clearly failed to meet these requirements. We sustain the Reys' Points of Error One and Two.

### WAIVER OF TIMELY PAYMENTS

In their Point of Error Four, the Reys claim that Ms. Acosta waived her right to timely payments by accepting late payments "from the beginning," and that she should have given further notice that she would not accept tardy payments in the future before she could properly accelerate the note. We find that our disposition of Points of Error One and Two renders this argument moot.

Ms. Acosta did not give notice of acceleration with opportunity to cure; whether she should have included in the nonexistent notice a warning that all payments must henceforth be timely is a question we need not address. Point of Error Four is overruled.

### ATTORNEY'S FEES, COSTS, AND DELINQUENT PAYMENTS

■ In their Point of Error Three, the Reys claim that because they tendered their delinquent payments in 1988, they are relieved from paying interest, attorney's fees, and costs. We agree that the Reys are not liable for attorney's fees or costs, based upon our holding that Acosta failed to give the notice of acceleration required by Section 51.002(d). *Diversified, Inc. v. Walker,* 702 S.W.2d 717, 721 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

■ The record reflects that the Reys have not made *any* payments on this note since Ms. Acosta refused their 1988 cashier's checks. Although the Reys' brief is not crystal clear, from counsel's argument at trial we interpret this point to urge that we extend the note an additional period of time, from May 1988 until (apparently) mandate issues, without any interest accruing during that period. In support of this point, the Reys rely upon the *Diversified* case. We do not read that case as excusing payments on both interest and principal for the lengthy period of litigation, nor do we believe that Ms. Acosta's single failure to provide notice of acceleration over five years ago excuses the debtors from paying principal and interest for such an extended period. *Diversified,* 702 S.W.2d at 721; *Williamson v. Dunlap,* 693 S.W.2d 373, 374 (Tex.1985); *Allen Sales and Servicenter, Inc. v. Ryan,* 525 S.W.2d 863, 866 (Tex.1975). Ms. Acosta is entitled to judgment for all past due installments plus interest as provided in the note. *Id.* at 866. We overrule Point of Error Three, remanding so the trial court may determine the amount of

---

**2.** We note that Section 51.002(d) applies to purchase of residential real estate. Most purchases of this type entail mortgages of ten, fifteen, or thirty years. If we refused to give this statute retroactive effect, therefore, most residential lien holders would be exempt from the statute's notice requirement until sometime in the twenty-first century. We do not believe the legislature intended such a delay in the protection it provided home purchasers by passing this statute.

past due installments, plus interest, owed by the Reys under the real estate lien note.

### D.T.P.A. AND DEBT COLLECTION PRACTICES ACT CLAIMS

In their fifth, sixth, and seventh points of error, the Reys claim that the trial court should have awarded them damages based upon their counterclaims for violations of the D.T.P.A., TEX.BUS. & COM.CODE ANN. § 17.41 et seq. (Vernon 1987), and Debt Collection Practices Act TEX.REV.CIV.STAT.ANN. art. 5069–11.01 et seq. (Vernon 1987).

 Wrongful acceleration of a real estate note, as occurred here, violates the Texas Debt Collection Practices Act and the Deceptive Trade Practices Act as a matter of law. *Dixon v. Brooks,* 604 S.W.2d 330, 334 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). *Dixon* makes clear that where a creditor "represents to appellants that she had the right to terminate the contract without giving the required notice.... This is a violation as a matter of law [of the D.T.P.A.]...." *Dixon,* 604 S.W.2d at 334. Similarly, the Houston Court held that letters threatening to terminate a contract without the required notice violated the Debt Collection Practices Act, TEX.REV.CIV.STAT. ANN. art. 5069–11.02(h), which specifically prohibits any debt collector from "threatening to take any action prohibited by law." Clearly, Section 51.002(d) prohibited demand for the entire outstanding debt under the contract, without the requisite notice of acceleration and grace period. We recognize that the Reys have retained possession of this property throughout litigation, and have not made a single payment on the note since 1988. Proof of any compensable damages may prove elusive under these facts, but the trial court should nevertheless consider these causes of action and any damages sustained as a result of their violation. We sustain Points of Error Five, Six, and Seven, and remand to the trial court for consideration of the Reys' counterclaims.

### CONCLUSION

TEX.PROP.CODE ANN. § 51.002(d), a remedial statute, is to be applied retroactively. We therefore hold that the trial court erred in granting judgment for the entire loan amount when the note holder did not afford debtors written notice and a 20–day period within which to make their delinquent payments. Debtors are nevertheless liable for all past due payments. The D.T.P.A. and Texas Debt Collection Practices Act apply in this case, and the trial court should consider the Reys' counterclaims. We reverse the judgment of the trial court, and remand for further proceedings in accordance with this opinion.