02-10-404-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00404-CV 

 

 


 
 
 G4 Trust, grover gibson, trustee
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 consolidated
 gasoline, Inc. and billy delp III
 
 
  
 
 
 APPELLEES 
 
 


 

 

------------

 

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM
OPINION[1]

----------

I.    
Introduction

            In
two issues, Appellant G4 Trust (G4) appeals the trial court’s ruling that an
extrajudicial foreclosure sale was valid and its judgment that G4 take nothing
against the purchasers at the sale, Appellees Consolidated Gasoline, Inc. and
Billy Delp III (collectively, CGI).  We reverse and remand.

II.  Factual and Procedural Background

In
2004, JRP Equipment, Inc. and James R. Phillips (collectively, JRP) borrowed
money from National Bank of Texas to purchase some property in Tarrant County,
executing a promissory note (the Note) and securing the loan with a deed of trust
(the Deed) that named the bank as beneficiary and the bank’s president, George
Bradford, as trustee.  JRP defaulted on the loan, and on August 1, 2008, the
bank gave JRP written notice of default and then accelerated the Note’s
maturity when JRP failed to cure the default.

On
August 12, 2008, Bradford filed a written notice of trustee’s sale to be held
on September 2, 2008, and provided written notice to JRP.  The written notice
did not state Bradford’s address, street or otherwise.  Bradford’s cover letter
contained the bank’s post office box number in its letterhead.

On
August 28, 2008, the bank transferred the Deed, endorsed the Note to CGI, and
gave written notice of the transfer to JRP.  CGI appointed Billy Delp Jr. as
substitute trustee to conduct the September 2, 2008 foreclosure sale, and Delp
Jr. did so, selling the property to CGI.  Not long after the sale, JRP assigned
to G4 any causes of action it might have that related to the foreclosure, and
G4 filed a notice of lis pendens, claiming an interest in the property. 
Notwithstanding the assignment, however, JPR filed suit in December 2008,
seeking to set aside the foreclosure based on defective notice.  G4 intervened
in the suit in 2010.

          In
its August 31, 2010 judgment, the trial court found that JRP had assigned its
claims to G4 and ordered that JRP take nothing against CGI and Delp III.  It
also found that the September 2, 2008 foreclosure sale should not be set aside,
removed G4’s lis pendens, and ordered that G4 also take nothing against CGI and
Delp III.  The trial court made the following conclusions of law pertinent to
this appeal:

6.  Notice of the
Trustee’s Sale dated August 12, 2008 and the letter of same date sent to JRP[]
complied with Texas law and the provisions of the deed of trust.

 

7.  Notice of Trustee’s
Sale served with George Bradford’s letter complied with the requirement of Tex.
Prop. Code [Ann.] § 51.002.

 

8.  [CGI] was not
required to provide additional 21 day written notice of the foreclosure sale to
[JRP] after it purchased the Note on August 28, 2008.

 

G4
now appeals.

III. 
2005 Amendment and Strict Compliance

          In
two issues, G4 challenges the trial court’s conclusion that Bradford’s August
12, 2008 notice to JRP was valid because (1) the 2005 amendment to property code
section 51.0075(e) applied, rendering notice defective; and (2) the bank and
CGI did not strictly comply with the property code and Deed notice
requirements.

A.  Standard of Review

          We
review statutory construction de novo, and in construing statutes, we ascertain
and give effect to the legislature’s intent as expressed by the statute’s
language.  City of Rockwall v. Hughes, 246 S.W.3d 621, 625 (Tex. 2008); see
also Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009)
(op. on reh’g) (“Where text is clear, text is determinative of [the legislature’s]
intent.”) ;  Fleming Foods
of Tex., Inc. v. Rylander, 6 S.W.3d 278, 284 (Tex. 1999) (noting that courts
should not adopt a construction that renders statutory provisions meaningless).

B.  Property
Code Sections 51.002, 51.0075, and the 2005 Amendment

          Property
code section 51.002 requires, for a sale of real property under contract lien,
that notice be given at least twenty-one days before the date of the sale by “serving
written notice of the sale by certified mail on each debtor who, according to
the records of the mortgage servicer of the debt, is obligated to pay the debt.” 
Tex. Prop. Code Ann. § 51.002(b)(3) (West Supp. 2010).  Section 51.0075(e),
added in 2005, requires disclosure of the “street address” of a trustee or
substitute trustee in a section 51.002(b) foreclosure notice.  See Act
of May 25, 2005, 79th Leg., R.S., ch. 1231, § 1, 2005 Tex. Gen. Laws 3980
(amended 2009) (current version at Tex. Prop. Code Ann. § 51.0075 (West Supp.
2010)).

          G4
argues that the 2005 amendment’s enabling language and the language in the Deed
required the trial court to retroactively apply the amendment to the Deed.  The
2005 amendment’s enabling language states that the amendment applies

to a security
instrument or other contract executed on or after the effective date of this
Act and to a security instrument or other contract executed before the
date of this Act that does not conflict with the changes in law made by
this Act.  A security instrument or other contract executed before the
effective date of this Act that conflicts with the changes in law made by this
Act is governed by the law in effect at the time the security instrument or
other contract was executed, and the former law is continued in effect for that
purpose.

 

 Id.
§ 2, 2005 Tex. Gen. Laws 3980–81 (emphasis added).

C. 
Retroactivity

          The
legislature can retroactively amend a statute so long as it does not “take away
or impair vested rights acquired under existing law” in contravention of the
Texas constitution.  McCain v. Yost, 155 Tex. 174, 284 S.W.2d 898, 900
(1955).  “Whether a right may be regarded as vested depends on considerations
of ‘fair notice,’ ‘reasonable reliance,’ and ‘settled expectations.’”  Robinson
v. Crown Cork & Seal Co., 335 S.W.3d 126, 151 (Tex. 2010) (Medina, J.,
concurring) (quoting Owens Corning v. Carter, 997 S.W.2d 560, 572–73
(Tex. 1999)); see also Mellinger v. City of Houston, 68 Tex. 37,
45, 3 S.W. 249, 253 (1887) (stating that “until the state of facts which the
law declares shall give a right comes into existence[,] there cannot be in law
a right,” and that because of this, “it has been constantly held that, until
the right becomes fixed or vested, . . . the [legislature may] declare that the
given state of facts shall not fix it, and such laws have been constantly held
not to be retroactive in the sense in which that term is used”); Rey v.
Acosta, 860 S.W.2d 654, 656–57 (Tex. App.—El Paso 1993, no writ) (holding
that 1993 provisions of section 51.002(d)—requiring written notice of intent
and a twenty-day period for debtors to cure default before a note on
residential real estate could be accelerated—applied retroactively to a
contract entered before the statute’s effective date because the provisions
were procedural and remedial and did not affect substantive rights).[2]

D. 
Analysis

          The
parties incorporated into their agreement the laws in force in 2004 when they
executed the Deed.  See Wessely Energy Corp. v. Jennings, 736 S.W.2d
624, 626 (Tex. 1987) (recognizing that laws existing at the time a contract is
made become a part of the contract and govern the transaction).  However, the
Deed expressly acknowledges the potential for change in the law, stating, in
relevant part:

15.  REMEDIES ON
DEFAULT.  In some instances, federal and state law will require Lender to
provide Grantor with notice of the right to cure or other notices and may
establish time schedules for foreclosure actions.  Subject to these
limitations, if any, Lender may accelerate the Secured Debt and foreclose this
Security Instrument in a manner provided by law if Grantor is in default.

 

. . . . 

In the event of a
default, it shall be the duty of the Trustee . . . to invoke power of sale as
required by Section 51.002 of the Texas Property Code, as then amended .
. . .  Trustee shall give notice of sale including the time, terms and place of
sale and a description of the Property to be sold as required by the
applicable law in effect at the time of the proposed sale.[[3]] 
[Emphasis added.]

 

See Deacon
v. City of Euless, 405 S.W.2d 59, 61 (Tex. 1966) (noting that
laws may operate retroactively when it is apparent that the makers and adopters
intended retroactive application of an amendment, provided retroactive
application does not impair vested rights); Fix v. Flagstar Bank, FSB,
242 S.W.3d 147, 155 (Tex. App.—Fort Worth 2007, pet. denied) (same).

          The
Deed expressly incorporates section 51.002’s notice
requirements.  Tex. Prop. Code Ann. § 51.002.  Section 51.0075(e),
pertaining to the authority of a trustee or substitute trustee, requires that
the name and street address for the trustee or substitute trustee “shall be
disclosed on the notice required by Section 51.002(b).”  Id. §
51.0075(e).  This addition does not conflict with the
Deed’s express notice requirements; rather, it merely supplements the list of items
required for foreclosure notice that the Deed requires by incorporating section
51.002 and does not impair the Deed holder’s right to foreclose.  See Mellinger,
68 Tex. at 45, 3 S.W. at 253; see also Fix, 242
S.W.3d at 147; Deacon, 405 S.W.2d at 61.  Thus, because it
does not conflict with the Deed or impair vested rights—that is, the bank’s
right to foreclose did not vest until JRP defaulted in 2008—we hold that the
2005 amendment applies to notice sent under the Deed.  Deacon,
405 S.W.2d at 61; see also Praeger v. Wilson,
721 S.W.2d 597, 601 (Tex. App.—Fort Worth 1986, writ ref’d n.r.e) (refusing to
read a qualifying restriction into a contract clause’s plain language when
doing so would alter the ordinary meaning of the contract clause).  We
sustain G4’s first issue. And because strict compliance with the notice
requirements in a deed of trust is necessary for a trustee to invoke the power
of sale in a foreclosure, and as set out above, the Notice did not strictly
comply, we sustain G4’s second issue as well.  See Univ. Sav. Ass’n v.
Springwoods Shopping Ctr., 644 S.W.2d 705, 706 (Tex. 1982) (“Texas courts
have consistently held that the terms set out in a deed of trust must be
strictly followed.”); Myrad Props., Inc., v. LaSalle Bank Nat’l Ass’n,
252 S.W.3d 605, 615 (Tex. App—Austin 2008) (“Because a trustee’s power to sell
the property is derived from the deed of trust and statute, strict compliance
with these requirements is considered a prerequisite to the trustee’s right to
make the sale.”), rev’d on other grounds, 300 S.W.3d 746 (Tex. 2009); see
also Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 768 (Tex. 1983)
(“Compliance with the notice condition contained in the deed of trust and as
prescribed by law is a prerequisite to the right of the trustee to make the
sale.”); cf. Powell v. Stacy, 117 S.W.3d 70, 75 (Tex. App.—Fort
Worth 2003, no pet.) (stating that notice was valid when defect did not affect
notice requirements); Sanders v. Shelton, 970 S.W.2d 721, 725–26 (Tex.
App.—Austin 1998, pet. denied) (reasoning that the words used in the notice
need not mimic the statutory language to comply with the statute as long as the
information required by the statute was actually conveyed).[4]

IV. 
Conclusion

          Having
sustained both of G4’s issues, we reverse the trial court’s judgment and remand
this case to the trial court for further proceedings consistent with this
opinion.

 

BOB MCCOY
JUSTICE

 

PANEL: 
WALKER, MCCOY, and MEIER, JJ.

 

DELIVERED: August 31, 2011









[1]See Tex. R. App. P. 47.4.





[2]In Rey, the buyers
specifically waived notice, and the statutory amendment occurred before the
note-holder’s action to accelerate the note.  860 S.W.2d at 658.  The court
held that the statute was remedial and did not alter any substantive rights when
applied retroactively because the note-holder still had the right to accelerate
the note.  Id.  The statutory amendment “simply required that written
notice followed by a 20-day grace period precede acceleration.”  Id. 

 





[3]The Deed also provides for
removal of the trustee and appointment of a successor trustee through written
designation.  The 2005 amendment introduced a change in subsection (c) of
section 51.0075 that mirrored this provision in the Deed.  See Act of
May 25, 2005, 79th Leg., R.S., ch. 1231, § 1, 2005 Tex. Gen. Laws 3980 (amended
2009) (current version at Tex. Prop. Code Ann. § 51.0075(c) (West 2011))
(allowing a mortgagee to appoint a substitute trustee to succeed to all title,
powers, and duties of the original trustee by written instrument).





[4]CGI contends that the
August 12 notice complied with Texas law, whether section 51.0075(e) applied or
not, because JRP’s president knew Bradford’s address and because Bradford’s
cover letter “contains the required information.”  However, as discussed above,
section 51.0075(e) requires disclosure of a “street address” for the trustee or
substitute trustee in the notice.  See Tex. Prop. Code Ann. § 51.0075(e). 
Neither the notice nor the cover letter contained Bradford’s street address. 
While we are not blind to the equities of this dispute—as the note-holder, CGI
was entitled to be made whole—we are constrained to hold that the sale is void
because strict compliance is required to invoke power of sale under a deed of
trust.